[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR APPOINTMENT OF SPECIAL PUBLIC DEFENDER
 FACTUAL BACKGROUND
This habeas corpus petition came to this court on June 6, 1997. Discovery and other pretrial motions took place until February 23, 2000 when the evidentiary hearing commenced. All of the evidence was concluded on April 6, 2000.
The court ordered briefs to be filed. The final brief was received on June 26, 2000.
Throughout the three years of these proceedings, the petitioner was represented by Attorney Henry Theodore Vogt. It wasn't until April of this year after the conclusion of the evidentiary hearing, that new counsel filed an appearance alleging the petitioner's dissatisfaction with Attorney Vogt's services and requesting to be substituted as counsel.
The court refused to substitute new counsel at that point because Attorney Vogt had only yet to file a reply brief. Nevertheless, the court permitted new counsel to file an additional brief. After Attorney Vogt filed the reply brief he was permitted to withdraw as counsel.
Attorney Vogt had been hired to represent the petitioner by a group called "Friends of Richard LaPointe." This group was affiliated with Arc of Connecticut, an association advocating the interests of people with mental disabilities. The petitioner is indigent and would qualify for representation by the Public Defender's Office if not represented by private counsel.
Apparently, after the conclusion of the evidentiary hearing, Attorney Vogt and Friends of Richard LaPoint had a disagreement as to whether Attorney Vogt was entitled to further compensation and reimbursement for expenses. The Friends refused to pay any additional funds to him.
Attorney Vogt therefore sought the assistance of the Public Defender's office which filed a petition for his appointment as a special public defender "nunc pro tunc" as of the commencement of the habeas hearing on February 23, 2000.
At an oral hearing held on May 17, 2000, the court was advised that CT Page 9496 Attorney Vogt was seeking the sum of $14,693.82, constituting unreimbursed expenses incurred prior to and during the evidentiary hearing but prior to the motion for his appointment as a special public defender.
 ISSUE
The unique issue before this court then is whether it is lawful and appropriate for this court to appoint attorney Vogt as a special public defender when there are no services remaining for him to perform. The sole purpose of the appointment would be to enable Vogt to be paid, from public funds, expenses (and "perhaps other fees), which he claims have not been paid by the private organization which hired him.
 DISCUSSION AND CONCLUSION
For the following reasons this court is of the opinion that Attorney Vogt's appointment as a special public defender is not warranted by the facts, would create a precedent sanctioning the State to pay thousands of dollars to attorneys who have a "falling out" with their clients, or whose employment contract has been breached by their employer. It would furthermore be contrary to Connecticut law:
(1) To appoint any special public defender after the case has been concluded for the acknowledged purpose of paying money to an attorney who has been privately hired and subsequently terminated would create a precedent contrary to the interests of the public defender system. That system was created to assist indigent defendants unable to pay for legal counsel. In this case, although the petitioner is indigent, he already had private counsel for three years and now has new private counsel to protect his interests. To appoint a special public defender under these circumstances would open the proverbial "pandora's box." Any attorney privately retained and subsequently discharged with or without just cause could ask the State to pay "any fees and expenses due to him from a reneging client. Clearly, Attorney Vogt's claim for expenses should be made against ARC.
(2) The evidence presented at the hearing on this motion further establishes that Attorney Vogt should not be paid by the State of Connecticut. Margaret H. Dignati of ARC testified that ARC had already paid Attorney Vogt $61,341.23, which was "more than he was entitled to." She further pointed out that another organization, Centurion Ministries, had committed to pay all future expenses, but because Attorney Vogt did not wish to work with them he returned $10,000 to them. Centurion Ministries is now subsidizing new counsel's fees and expenses. CT Page 9497
Here again, if Attorney Vogt maintains he is due money, he should pursue that claim against ARC, the party that hired him.
(3) It is this court's opinion that to appoint a special "public defender in circumstances such as this where the evidence and briefs have been completed and there are no further services for the attorney to perform since new counsel have entered their appearances would be contrary to Connecticut law.
The sole purpose of the appointment would be to subsidize an attorney under the guise of a special public defender with no services to perform. It would be, purely and simply, an emolument.
The public policy of this state against public emoluments has been discussed by our Supreme Court in Chotkowski v. State of Connecticut,240 Conn. 246, 257-264 (1997). In that case, the court discussed the prohibition against "exclusive public emoluments or privileges from the community contained in Article First, § 1 of the Connecticut Constitution.
The court opined that (speaking of a challenge to legislation), "To prevail under Article First, § 1, of our constitution, the State must demonstrate that "the sole objective of the General Assembly is to grant personal gain or advantage to an individual". . . . If, however, an enactment serves a legitimate public purpose, then it will withstand a challenge under Article First, § 1."
Although Chotkowski deals with the constitutionality of legislative emoluments only, it is a clear declaration of a public policy that no dispensation of public funds shall be made for personal gain or advantage to an individual.
The court has not been presented with no other case law or research. It has conducted its own research of federal and state law, but was unable to uncover any additional law on this question. It appears to be one of first impression, at least in Connecticut.
The court is satisfied, however, that Chotkowski does stand for the public policy of this state and, therefore, finds that to grant this motion would be in violation of the public policy expressed by our Supreme Court in Chotkowski.
The court finds, for the above reasons, that the motion for appointment of a special public defender should be, and is therefore, denied.
Freed, J. CT Page 9498